[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14422
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-22704-JJO

ALBA CARDONA,

Plaintiff-Appellant,

versus

THE MASON AND DIXON LINES, INC.,
TIMOTHY LEVERETTE,
NATIONAL TRUCK LEASING,
a.k.a. National Truck Funding,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 18, 2018)

Before ED CARNES, Chief Judge, HULL, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Plaintiff Alba Cardona collided on the highway with a freight truck operated by defendant Timothy Leverette, an employee of defendant The Mason & Dixon Lines, Inc.  Cardona sued the defendants for negligence and a jury found in their favor.  Cardona appeals, contending that the district court abused its discretion by excluding certain evidence and denying her motion for a new trial.[1]

## I.

## A.

On July 19, 2013, Cardona and Leverette were both driving eastbound on State Road 826 in Miami, Florida.  Cardona was driving a sedan, while Leverette was driving a tractor-trailer truck.[2]  Just before the collision, Leverette was travelling in the second lane from the left hand median.  Cardona was travelling in the same direction in the lane to the immediate right of Leverette.  Cardona and Leverette disagreed as to who was at fault for the collision.

Cardona testified that as she was driving on the highway, she saw Leverette's truck behind her in her rearview mirror.  According to her, Leverette failed to yield the right-of-way as he changed lanes to get over to an exit on the right side of the highway; when he changed lanes, he hit her car in the driver's door.  But according to Leverette, Cardona was passing him on his right, and as

---

[1] The parties agreed to try the case before a magistrate judge.  See 28 U.S.C. § 636(c).

[2] There was no dispute that The Mason & Dixon Lines was vicariously liable for any negligence of Leverette.

she entered his lane she struck the right front fender of his truck, causing her to lose control of her car.

When Cardona collided with the truck's right front fender, her car turned sideways, flipped over, and came to a stop inverted on the median area of the roadway. Florida Highway Patrol Trooper Harold Gracey was driving westbound on the highway when he saw Cardona's overturned car. He ran over to her and extracted her from the car. An ambulance arrived at the scene and took her to the hospital. Cardona testified that she sustained injuries as a result of the crash, including headaches, back problems, and a fractured shoulder.

Gracey inspected the scene for physical evidence, such as tire marks from Cardona's car, and prepared an accident report. The report contained a narrative about the accident and a diagram showing how it occurred. It stated that Cardona had operated her car in a careless or negligent manner. It also stated that Leverette operated his truck in a careless or negligent manner and that he made an improper lane change by pulling in front of Cardona's car.

Gracey prepared an updated accident report on September 26, 2013. The accident narrative and diagram were the same as in the original. But the updated report stated that Cardona did not contribute to the accident. It did not indicate the reason for that change, but Cardona asserted that Gracey made a clerical error in the original report. Like the original report, the updated report stated that Leverette

3

operated his truck in a careless or negligent manner and that he committed an improper lane change by pulling out in front of Cardona's car.

## B.

Cardona filed this lawsuit against Leverette and The Mason & Dixon Lines, asserting various negligence claims against both defendants. The defendants filed a motion in limine to exclude Gracey's reports. They argued that because Gracey never saw the accident, the accident narrative and the diagram were based on hearsay. They also argued that his opinion about who was at fault should be excluded as unduly prejudicial. Cardona argued that Gracey did not base his accident narrative and opinion on the parties' statements because the skid marks at the accident site indicated which lanes the vehicles were travelling in. Cardona also argued that it was possible Gracey viewed the accident because he was already at the scene by the time Leverette stopped his truck.

The court ruled that under Florida's accident report privilege, Gracey's reports were inadmissible insofar as any portions relied on Cardona's or Leverette's statements, but that he could testify as to the estimated damage to the vehicles because those estimates were within his observations. See Fla. Stat. § 316.066(4) (precluding the admission of reports or statements made to law enforcement by a person involved in an accident). It also ruled that Gracey's

opinion about who caused the accident was inadmissible as unduly prejudicial under Federal Rule of Evidence 403.

The case proceeded to a three-day jury trial. Gracey testified about his response to the accident and the physical evidence he saw at the scene. He testified that he walked backwards from Cardona's car and traced the yaw marks — skid marks caused by a wheel travelling sideways — back to the initial point of impact. He stated that he could ascertain how the accident occurred by tracing those marks, which began in the third lane from the left and ended where Cardona's car overturned.

At that point, Cardona asked Gracey if he could determine whether Leverette hit Cardona based on the yaw marks. The defendants objected on the ground that Gracey was not listed as an expert, and, in accordance with the court's ruling on the motion in limine, could not opine on who caused the accident. Cardona agreed that Gracey was not listed as an expert, but argued that as an officer he could render his opinion as to how the accident occurred. The court ruled that he could testify as to what he saw, such as yaw marks or dents on the vehicles, but that he could not give an opinion as to the cause of the accident, even if that opinion was based only on the physical evidence.

5

The jury found in favor of the defendants.[3]  Cardona filed a motion for a

new trial, contending that (1) Gracey's reports should have been admitted,

(2) Gracey should have been allowed to give his opinion about who caused the

accident, and (3) the defendants' counsel made improper comments during closing

argument.  Cardona also included a proffer from Gracey in which he stated that his

conclusions in his reports were based on his observations of the physical evidence,

not on the statements of any of the parties involved in the accident.

The court denied that motion.  It ruled that because Gracey was not an

expert, he could not provide an opinion as to who caused the accident and could

testify only about what he observed at the scene.  It also stated that Gracey's

proffer did not affect its ruling.  And it rejected Cardona's argument that the

defendants' counsel made improper comments in closing argument.  This is

Cardona's appeal.

## II.

We review for abuse of discretion the district court's evidentiary rulings and

its ruling on a motion for a new trial.  ML Healthcare Servs., LLC v. Publix Super

Mkts., Inc., 881 F.3d 1293, 1297 (11th Cir. 2018); Hicks v. City of Tuscaloosa,

870 F.3d 1253, 1257 (11th Cir. 2017).  Cardona contends that the district court

---

[3] After deliberations began, the jury asked for the accident reports.  With the agreement of both parties, the court informed the jury that pursuant to Florida law, the accident reports were not admitted into evidence and could not be provided.

abused its discretion by excluding the reports, limiting Gracey's testimony, and denying her motion for a new trial based on the defendants' counsel's comments during closing argument.

## A.

Cardona and the defendants agree that Florida's accident report privilege applies to this case. See Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). Florida's accident report privilege provides that:

> [E]ach crash report made by a person involved in a crash and any statement made by such person to a law enforcement officer for the purpose of completing a crash report required by this section shall be without prejudice to the individual so reporting. Such report or statement may not be used as evidence in any trial, civil or criminal.

Fla. Stat. § 316.066(4). The district court ruled that "the portions of the crash report and the updated crash report which are based on the statements and observations of individuals involved in the crash (including the diagrams) are excluded from the evidence [to be] presented at trial." But it stated that Gracey could testify as to what he observed, such as the damage to the vehicles. Cardona argues that ruling was an abuse of discretion because Gracey's accident reports were not based on the parties' statements but on the physical evidence he observed at the scene.

7

That argument is meritless.  Cardona acknowledges that the accident report privilege prohibits admission of statements in the reports made by those involved in the accident.  See, e.g., Hammond v. Jim Hinton Oil Co., Inc., 530 So. 2d 995, 997 (Fla. 1st DCA 1988) ("Because some of the information used to construct the diagrams was not based on first-hand knowledge and was based in part on the testimony of a driver of one of the vehicles involved in the accident . . . it was error to admit [the diagrams] into evidence."); Brackin v. Boles, 452 So. 2d 540, 544 (Fla. 1984) (holding that the purpose of the accident report privilege statute "is to clothe with statutory immunity only such statements and communications" made by the "driver, owner, or occupant of a vehicle").  The court followed the statute in ruling that the accident reports were inadmissible insofar as they were based on the parties' statements but that Gracey could testify about what he had observed at the scene.  And the trial transcript shows that Gracey did testify about what he saw at the scene.  As a result, Cardona has failed to show that the district court abused its discretion in excluding the accident reports.[4]

## B.

Cardona next argues that the district court erred in prohibiting Gracey from giving his opinion about who caused the accident.

---

[4] Cardona argues that the accident reports were admissible under the public records hearsay exception, Fed. R. Evid. 803(8), and under Rule 403, but those arguments fail because the reports (insofar as they relied on the parties' statements) were inadmissible under the Florida privilege.

That ruling was not an abuse of discretion.  Because Gracey was not an expert, he could offer opinion testimony only if it was "not based on scientific, technical, or other specialized knowledge."  Fed. R. Evid. 701(c).  As the district court stated, Gracey's opinion that Leverette caused the accident, which was based on the yaw marks from Cardona's car, required the kind of specialized knowledge that an accident reconstruction expert could provide.[5]  See United States v. Henderson, 409 F.3d 1293, 1300 (11th Cir. 2005) (stating that a doctor's diagnosis of an injury "would be permissible lay testimony, but her statement about the cause of the injury" was a hypothesis, and noting that the "ability to answer hypothetical questions is the essential difference between expert and lay witnesses") (quotation marks and alterations omitted).  Because Gracey was not an expert, the district court did not abuse its discretion in limiting his testimony to his personal observations.

## C.

Cardona's final argument is that the district court abused its discretion in denying her motion for a new trial based on defendants' counsel's comments during closing argument.  Defendants' counsel asked the jury to "look at the physics" of the collision, and he then argued that the evidence supported Leverette's version of the accident.  And at another point he explained that

[5] Both parties planned to call accident reconstruction experts, but the district court did not allow them to testify.

Cardona's car left yaw marks, which, he explained, are caused when tires spin sideways. Cardona argues that those comments were improper because they were not based on the evidence at trial.[6]

That argument fails. Contrary to Cardona's assertion, counsel's reference to the "physics" of the crash was not based on the excluded testimony of the defendants' accident reconstruction expert; counsel was using the word "physics" in a colloquial sense. And Gracey testified during trial that yaw marks are caused by a tire moving sideways, so counsel's comment on that point was based on the evidence. Neither of those comments was so "plainly unwarranted and clearly injurious" as to warrant a new trial. Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1282 (11th Cir. 2008) (quotation marks omitted). And after Cardona's objection, the court reminded the jury that the attorneys' comments were not evidence. See Allstate Ins. Co. v. James, 845 F.2d 315, 318 (11th Cir. 1988) (noting that appellate courts look to whether a curative instruction was given to determine whether comments during closing argument are improper). As a result, the district court did not abuse its discretion in denying Cardona's motion for a new trial based on the comments during closing argument.

**AFFIRMED.**

---

[6] Cardona also argues that the district court's evidentiary rulings warrant a new trial, but that argument fails because those rulings were not an abuse of discretion.